IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH SELEXMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1874 |
| | § | |
| FORD MOTOR COMPANY and BAYWAY | § | |
| LINCOLN-MERCURY, INC., | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER DENYING REMAND**

Pending before the Court in the above referenced cause, seeking strict liability for a defective product and breach of warranty against Defendant Ford Motor Company ("Ford") and negligence against Ford and Defendant Bayway Lincoln-Mercury, Inc. ("Bayway"), the dealership where Plaintiff Joseph Selexman's ("Selexman's") allegedly defective Mercury Grand Marquis was serviced, removed on diversity grounds by Ford Motor Company complaining of improper joinder of Bayway, is Selexman's motion to remand (instrument #6), supplemented by #12-1 and Ex. A (affidavit of Dwayne Dossett and Defendant Bayway Lincoln-Mercury, Inc.'s service records).

**Allegations of the Original Petition (#1, Ex. D and Ex. A to #8)**

Selexman alleges that on March 27, 2013, while wearing his seat belt properly, he was driving his 2002 Grand Marquis when he was struck in his side door by a F150 pickup truck. His front air bag deployed, and he sustained "catastrophic injuries," including a "spinal cord injury that has resulted in permanent quadriplegia," as well as damages in the collision because of defects in the Grand

-1-

Marquis (identified in his motion to remand as "a defective restraint system, inadequate seat belt restraints and supplemental restraint system, including the front air bag for the driver's position"[1] and failure to provide a side air bag). He further charges Bayway with negligent maintenance of his vehicle, which purportedly was also a proximate cause of his injuries and damages.

## Applicable Law

The right to remove depends upon the plaintiffs' pleading at the time of the petition for removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939); *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995); *Ford v. Property & Cas. Ins. Co. of Hartford*, No. Civ. A. H-09-1731, 2009 WL 4825222, *2 (S.D. Tex. Dec. 9, 2009).

Under 28 U.S.C. § 1441(a)[2] any state court action over which federal courts would have original jurisdiction may be removed from state to federal court. *Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 282 (5th Cir. 2007; *Guttierrez v. Flores*, 543

---

[1] #6, pp. 1-2.

[2] Title 28 U.S.C. § 1441(a) states, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The removing party bears the burden of showing that subject matter jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts are construed against removal because the removal statute is strictly construed in favor of remand. *Id.*

F.3d 248, 251 (5th Cir. 2008)("A district court has removal jurisdiction in any case where it has original jurisdiction.").

Under 28 U.S.C. §1332, a defendant may remove a case if there is (1) complete diversity of citizenship and (2) the amount in controversy is greater than $75,000, exclusive of interests and costs.[3] When jurisdiction is based on diversity, citizenship must be distinctly and affirmatively alleged. *Getty Oil Corp. v. Ins. Co. of North America*, 841 F.2d 1254, 1259 (5th Cir. 1988), *citing McGovern v. American Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975).[4]

The citizenship of a corporation is determined under 28 U.S.C. § 1332(c) by the state under whose laws the entity was organized or where it has its principal place of business.

The doctrine of improper joinder, or fraudulent joinder,[5] prevents defeat of federal removal jurisdiction premised on diversity by the presence of an improperly joined, non-diverse

---

[3] Ford concedes that Selexman's damages claims satisfy the amount in controversy requirement. Notice of Removal, #1 at p. 4.

[4] Here Selexman is a resident of Harris County, Texas; Ford is a Delaware corporation with its principal place of business in Dearborn, Michigan, and Bayway is a "foreign corporation doing business in the state of Texas and having its principal place of business in Houston, Harris County, Texas." Orig. Petition, ¶¶ 2-4.

[5] The Fifth Circuit prefers the term "improper joinder" to "fraudulent joinder" because it is more consistent with the statutory language in 28 U.S.C. §§ 1141 and 1332. *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 and 572-73 (5th Cir. 2004).

defendant.  *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).  Citizenship of an improperly joined party is totally disregarded in determining the court's subject matter jurisdiction. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2003).

"A claim of fraudulent joinder must be pleaded with particularity and supported by clear and convincing evidence." *Parks v. New York Times Co.,* 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949 (1964).  Improper joinder may be established by showing (1) actual fraud in the pleading of jurisdictional facts or (2) an inability to establish a cause of action against the non-diverse defendant in state court.  *Gasch*, 491 F.3d at 281; *Smallwood*, 385 F.3d at 573.  The latter is alleged here.  Defendants claiming improper joinder based on the second type bear a heavy burden of showing that there is no possibility of recovery by the plaintiff against the in-state defendant, i.e., in other words that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Smallwood*, 385 F.3d at 576[6]; *Smallwood*, 385 F.3d at 576 ("[T]here is no

---

[6] Sellexman argues that the appropriate test is "absolutely no possibility" that a claim exists under state law.  In *Travis*, the Fifth Circuit explains in detail that some cases have used this language, but that although the two tests appear dissimilar, they actually apply the same analysis ..  326 F.3d at 647-49. *See Kemp v. CTL Distribution, Inc.*, 440 Fed. Appx. 240, 244 (5th Cir. Aug. 5, 2011)("'There is no possibility of recovery' . . . stated differently means that there is no reasonable basis for

possibility of recovery by the plaintiff against an in-state defendant . . . stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not."). A "reasonable basis" means more than a mere a hypothetical basis. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)("whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery").

To determine whether a plaintiff has a "reasonable basis for recovery under state law, the court may "conduct a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573; *Anderson v. Georgia Gulf Lake Charles*, 342 Fed. Appx. 911, 915 (5th Cir. 2009). First the court should look at the pleadings to determine whether the allegations state a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. If the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the court may look beyond the pleadings and consider summary judgment-type evidence.

---

the district court to predict that the plaintiff might be able to recover against an in-state defendant.'"); *Cievas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)(same).

-5-

*Georgia Gulf*, 342 Fed. Appx. at 915-16. Discovery should be restricted and the summary inquiry should be limited to identifying "discrete and undisputed facts that would bar a plaintiff's recovery against an in-state defendant; anything more risks 'moving the court beyond jurisdiction and into the resolution of the merits . . . .'" *Id.* at 916, *quoting Smallwood*, 385 F.3d at 573-74. A defendant may submit and the court may consider affidavits and deposition transcripts in support of the defendant's removal petition. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990). Furthermore, where the reasons for finding that there is no reasonable basis for recovery against the in-state defendant would also dispose of all claims against the diverse defendants, the entire case should be remanded because "there is no improper joinder; there is only a lawsuit lacking merit." *Id.* at 574.

Moreover, "the existence of even a single valid cause of action against the in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Grey v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 & n.11 (5th Cir. 2004)(and cases cited therein).

The district court must resolve all contested fact issues and ambiguities of state law in favor of the plaintiff and remand. *Gasch*, 491 F.3d at 281. The Fifth Circuit explains, since "'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.' The removal statute is therefore to be strictly

-6-

construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281-82, *quoting Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995).

**Selexman's Motion to Remand (#6)**

Ford produced all of Bayway's service records relating to the Grand Marquis to show that there is no indication that Bayway ever serviced the supplemental restraint system and in its Notice of Removal (#1 at p.4, ¶11)) has asserted, "But Plaintiff does not allege that Bayway ever undertook to perform, or performed any service or maintenance on the supplemental restraint system" and thus "fails to state a claim against Bayway on which relief can be granted." Selexman points to VII, ¶¶30-32 of his Original Petition:

> 30. Defendant Bayway Lincoln-Mercury, Inc. undertook to perform maintenance services on the Grand Marquis.
> 31. Defendant Bayway Lincoln-Mercury, Inc. was negligent in the maintenance it provided as performed on the Grand Marquis.
> 31. The negligence of Defendant Bayway Lincoln-Mercury, Inc. was a proximate cause of Plaintiff's injuries and damages as set forth herein.

Selexman argues that Ford cannot show that there is no possibility that he can establish a cause of action against the in-state Defendant, Bayway, in state court and thus the case should be remanded.

> During any of the multiple maintenance or repairs performed on the Grand Marquis, Bayway should have become aware and/or should have known of the dangers of the Restraints Control Module (RCM), the supplemental

restraint system and/or the pretensioner restraint system
and should have warned Plaintiff of the dangers posed by
the RCM's possible (and ultimate) failure.  The 2002
Grand Marquis is equipped with a scanner used by auto
service maintenance personnel to diagnose problems with
the vehicle through the vehicle's onboard computer.
Bayway, the original seller and maintenance and service
provider to Plaintiff's 2002 Grand Marquis knew or should
have known of this vehicle's computer diagnostic system.
Moreover, Bayway should have warned Plaintiff of fault
codes or problems registered during Bayway's download
from the computer system during its service of the Grand
Marquis.

#6 at p. 11.

**Ford's Response (#8)**

Ford first contends that Selexman fails to plead a legally viable claim against Bayway under the Rule 12(b)(6) standard of review[7] because his petition contains "only a scant and formulaic

---

[7] When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  The plaintiff's legal conclusions are not entitled to the same assumption.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted).
"Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  "*Twombly* jettisoned the

recital of the elements of a negligence claim, coupled with mere

conclusory allegations against Bayway." #8 at p. 2. Next Ford

---

minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.
    When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004)("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion. [citations omitted]"). The court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Proc.* § 1487 (2d ed. 1990).

argues that Selexman does not and cannot demonstrate that Bayway owed him any duty, and that Texas law does not impose a duty on a post-sale car servicer to repair pre-existing defects. Third, if Bayway was the seller of the Grand Marquis to Selexman, Bayway has immunity to this product liability suit under Texas Civil Practice & Remedies Code § 82.003. If the Court "pierces the pleadings," the result is the same because Plaintiff's evidence, i.e., Bayway's service records, in support of his hypothetical theory of recovery fails to help him and even demonstrates that joinder of Bayway is improper.

The Court agrees that Selexman's pleading fails to satisfy Rule 12(b)(6) and that Ford's other reasons for remand show that amendment would be futile.

Ford asserts that in this crashworthiness case, Selexman does not allege that Bayway, unlike Ford, had any role in designing, manufacturing, or assembling the Grand Marquis or its restraint system, including the air bags, i.e., that it did anything to *cause* the alleged defective condition in Selexman's Grand Marquis. Instead Selexman makes an unsupported, conclusory statement that Bayway was negligent in maintaining a vehicle that was allegedly defective when it was initially manufactured. Ford insists that in a products liability action,[8] Texas law does not impose a duty on

---

[8] Section 82.001(2) of the Tex. Civ. Prac. & Rem. Code defines a "products liability action as "any action against a manufacturer or seller of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination

a post-sale automobile servicer to detect pre-existing design defects during a routine visit for maintenance or repairs. *State Farm Lloyds v. Polaris Industries, Inc.*, No. Civ. A. 6-12-19, 2012 WL 3985128, at *3 (S.D. Tex. Sept. 11, 2012)(copy attached to #8 as Ex. B)(Texas Civil Practices & Remedies Code Ann. § 82.003 "provid[es] nonmanufacturing sellers immunity from products liability suits," so a plaintiff seeking to recover against one "must satisfy one of its seven exceptions contained in section 82.003(a),[9] even if the allegations would otherwise state a valid

---

of theories." Selexman's claims against Bayway as a non-manufacturing seller are "fundamentally based in a product defect" and are governed by § 82.003(a). *Gonzalez v. Reed-Joseph International Co.*, Civ. A. No. 4:11-c-01094, 2013 WL 1578475, at *2-3 (S.D. Tex. Apr. 11, 2013). *See also Alonso ex rel. Estate of Cagle v. Maytag Corp.*, 356 F. Supp. 2d 757, 762 (S.D. Tex. 2005)(because plaintiffs' petition alleges strict products liability and negligence causes of action as "products liability actions," both cause of action are governed by the provisions in Chapter 82 of the Tex. Civ. Prac. & Rem. Code).

[9] Section 82.003(a) provides,

(a) A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

(1) that the seller participated in the design of the product;
(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;
(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;
(4) that:
    (A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;

claim under Texas law.")(and cases cited therein); *Rubin v. Daimlerchrysler Corp.*, H-04-4021, 2005 WL 1214605, at *7 (S.D. Tex. May 20, 2005)("Texas law does not support holding persons or entities [such as a dealership] with such indirect connection to the design process liable for design defects."). Furthermore this district has rejected such a "negligent servicing" claim. *Polaris*, 2012 WL 3985128, at *3 (owner of an all-terrain vehicle sued dealer for failure to properly service it when it was brought in for repair work; court rejected State Farm's argument that the in-state dealer's "unused opportunity to warn" about defects in the vehicle contributed to the cause of the accident and made the dealer liable because the dealer did not allege a statutory immunity exception and Texas law imposes no duty on a post-sale servicer "to discover

---

        (B) the warning or instruction was inadequate; and
        (C) the claimant's harm resulted from the
        inadequacy of the warning or instruction;
    (5) that:
        (A) the seller made an express factual
        representation about an aspect of the product;
        (B) the representation was incorrect;
        (C) the claimant relied on the representation in
        obtaining or using the product; and
        (D) if the aspect of the product had been
        represented, the claimant would not have been
        harmed by the product or would not have suffered
        the same degree of harm;
    (6) that:
        (A) the seller actually knew of a defect to the
        product at the time the seller supplied the
        product; and
        (B) the claimant's harm resulted from the
        defect; or
    (7) that the manufacturer of the product is:
        (A) insolvent; or
        (B) not subject to the jurisdiction of this court.

and warn about a latent manufacturing defect," so there was no reasonable basis to believe the plaintiff would be able to recover from the dealer). Sellers who do not manufacture a product have no liability for any harm allegedly caused by the product. Tex. Civ. Prac. & Rem. Code § 82.003(a); *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W. 3d 481, 491 (Tex. 2008)("The whole idea was that innocent retailers would not be sued *at all* in products cases, as the Legislature made clear it its amendments [to § 82.003]. [emphasis in original]")(Brister, J, concurring). Thus if Bayway was the actual seller of the Grand Marquis to Selexman, it has broad immunity under Texas' "innocent retailer" statue and cannot be liable here as a matter of law. *Polaris*, 2012 WL 3985128, at *3; *Garcia v. Nissan*, No. M-05-09, 2006 WL 869944, at *6 (S.D. Tex. Mar. 30, 2006)(holding that the plaintiff's negligence claims against a nonmanufacturing seller are precluded by the plain meaning of § 82.003).

Here Selexman has not pleaded an exception to liability under § 82.003(a) nor moved for leave to amend to do so. Therefore there is no reasonable basis to predict that Selexman can prevail on its negligence claims based on post-sale servicing against Bayway in state court. *Alonso ex rel. Estate of Cagle v. Maytag Corp.*, 356 F. Supp. 2d 757, 761 (S.D. Tex. 2005).

Accordingly, the Court

ORDERS that Selexman's motion to remand is DENIED.

**SIGNED** at Houston, Texas, this  20th  day of  November , 2014.

```
        _____
              MELINDA HARMON
         UNITED STATES DISTRICT JUDGE
```